UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN J. ADKINS,

        Plaintiff,

v.                                       Case No. 2:06-cv-26
                                         HON. GORDON J. QUIST

RUSS JONES,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff John J. Adkins, is a prisoner confined at the Kinross Correctional Facility (KCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against KCF Chaplain Russ Jones. Plaintiff has asserted a violation of his First Amendment right to practice his religion and his equal protection and due process rights under the Fourteenth Amendment. Plaintiff practices a Christian religion called The Church of God International.

Plaintiff is housed at the KCF long term protective custody unit A-3. It is undisputed that plaintiff is confined in protective custody for his own safety. The protective custody unit houses 60 prisoners in twenty cells. There are two restrooms, two shower rooms, a day room, a shared television and two telephones available for use in the unit by prisoners. Plaintiff has asserted that he is allowed free movement in the unit and has daily contact with the other inmates in the unit. Moreover, plaintiff explains that he is exposed at times to direct contact with some general population inmates.

Plaintiff has requested group worship in the protective unit. Plaintiff's request has been denied by defendant. Plaintiff has alleged that the religious materials in the library are old and

outdated.  Plaintiff alleges that it is mandated by his religion to have group worship.  Plaintiff alleges that the unit day room is available for group worship on Monday afternoon and evening and Saturday and Sunday morning.  Further, plaintiff has pointed out that defendant can appoint a prisoner to assist and lead the group if staff are unavailable.  Plaintiff claims that any alleged security concern cannot be a valid reason to refuse group worship in the protection unit.  Further, plaintiff has alleged that defendant has not provided communion when requested.

Presently before the Court is defendant's motion for summary judgment, and plaintiff's motion for summary judgment.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed

to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that defendant violated his equal protection rights by denying him group worship and the right to practice his religious beliefs. Defendant argues that plaintiff's equal protection claim should be dismissed. Plaintiff asserts that he is entitled to summary judgment on the claim. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff alleges that he is being discriminated against because he is a protective segregation prisoner. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Here, plaintiff is asserting that defendant interfered with plaintiff's fundamental right to practice his religion. Even though plaintiff argues that he is not alleging membership in a suspect class, he is entitled to the higher scrutiny because he is asserting interference with a fundamental right. However, plaintiff cannot show an equal protection violation because it appears that he is being treated exactly the same way as every other protective segregation prisoner. Further, there exists justifiable reasons to treat protective segregation prisoners differently than general population prisoners. That is the nature of protective segregation. Plaintiff cannot be denied fundamental rights or every privilege that general population prisoners have, however increased security concerns may limit privileges for protective segregation prisoners.

Plaintiff alleges that the mandatory language of the prison policy directives requires that he receive group worship in the protective segregation unit. Plaintiff alleges that failure to follow the policy directive violates his due process rights. Policy Directive 04.05.120 provides that protective segregation inmates shall have "[r]eligious programming, which shall include group religious services to the extent feasible." Contrary to plaintiff's assertion this is far from a mandate. Moreover, plaintiff does not have a due process right to religious services as a result of this policy language. First, the language itself is not mandatory. A protective segregation prisoner shall have group services "when feasible." The policy does not define the meaning of "when feasible." However, the language makes clear that there exists some discretion and that group services are not absolute for protective segregation prisoners.

In *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995) the plaintiff alleged that prison officials deprived him of procedural due process by refusing to allow him to present witnesses during a disciplinary hearing and then sentencing him to segregation for misconduct. *Sandin*, 515 U.S. at 474, 115 S. Ct. at 2294. In reversing the Ninth Circuit's decision that the prisoner had a liberty interest in remaining free of disciplinary segregation, the Supreme Court abandoned the search for mandatory language in prisoner regulations as previously called for under *Hewitt v. Helms*, 459 U.S. 460 (1983), and ruled instead that it was time to return to the due process principles which were established in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Meachum v. Fano*, 427 U.S. 215 (1976). *Sandin*, 515 U.S. at 483, 115 S. Ct. at 2300 (internal citations omitted).

In *Sandin*, the Supreme Court noted that in some cases, a restraint might be so extreme as to implicate rights arising directly from the Due Process Clause itself. *Sandin*, 515 U.S. at 483-484, 115 S. Ct. at 2300 (internal citations omitted). In addition, the Court recognized that States may create liberty interests protected by the Due Process Clause where the freedom from

restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300. However, such restraints are rare and do not include, for example, transfer into solitary confinement. *Sandin*, 515 U.S. at 486, 115 S. Ct. at 2301. Nor does placement in administrative segregation normally constitute such a hardship. *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997); *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th Cir. 1995). In addition, Plaintiff has no right to prison employment or to early release on parole. *Greenholtz v. Inmates, Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994), *cert. denied*, 513 U.S. 1158 (1995); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989). Moreover, there is no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any choice concerning the facility where he will be incarcerated. *Meachum*, 427 U.S. at 223-29[1]; *Olim v. Wakinekona*, 461 U.S. 238 (1983).

A plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300; *Rimmer-Bey*, 62 F.3d at 790-791. Restrictions placed on plaintiff, because he is confined in protective segregation are part of the ordinary incidents of prison life. Plaintiff has no due process right as a result of the policy directive language that provides protective segregation prisoners shall have group services when feasible.

---

[1]    In *Meachum v. Fano*, 427 U.S. 215, 223-229 (1975), the Court held that transfers between prisons of different severity, such as between a medium security prison and a maximum security prison, did not deprive the prisoner of liberty within the meaning of the Due Process Clause.

Plaintiff asserts that he is entitled to summary judgment on his First Amendment claim. Defendant has asserted an entitlement to qualified immunity on plaintiff's First Amendment claim. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

- 6 -

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422

- 7 -

(6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d 425. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Thus, where the underlying claim is one in which a certain motive or intent is an element, and plaintiff has made allegations which, if proven, will establish the existence of the necessary state-of-mind, a factual issue exists, preventing dismissal pursuant to Rules 12(b)(6) or 56. *See Sanchez v. Sanchez*, 777 F. Supp. 906 (D.N.M. 1991). In the Sixth Circuit, plaintiff need not include such allegations in his complaint, since in preparing his Complaint, he has no duty to anticipate affirmative defenses. *Dominique v. Telb*, 831 F.2d 673, 676 (1987). However, once the affirmative defense is raised, plaintiff must come forward with such additional facts as would establish the requisite state of mind). *Id.*

> Accordingly, when a plaintiff pleads his claim in generalized "notice" form, and the defense of qualified immunity is asserted through a motion to dismiss, the plaintiff is required to respond to that defense. If his original complaint is deficient in that regard, he must amend his complaint to include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity. For example, if the original complaint alleged that a police officer "used excessive force," and qualified immunity is asserted, then plaintiff

- 8 -

would be required to amend with allegations of evidence sufficient to
demonstrate that the force used against him was, indeed,
unreasonable.  It is in this sense that a heightened standard attaches
to plaintiff's pleading.

*Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995).

When ruling on qualified immunity, this court must expressly identify the right at
issue and summarize the factual or evidentiary basis for its conclusion.  *Noble*, 87 F.3d 157;
*Wegener*, 933 F.2d at 392.  In determining whether a clearly established right exists, the district court
looks first to the binding precedent of the Supreme Court, then to that of the Sixth Circuit, and then
finally to decisions of other jurisdictions.  *Id.*; *Masters v. Crouch*, 872 F.2d 1248, 1251-52 (6th Cir.),
*cert. denied sub nom*, *Frey v. Masters*, 493 U.S. 977 (1989); *Poe v. Haydon*, 853 F.2d 418 (6th Cir.
1988), *cert. denied*, 488 U.S. 1007 (1989); *Ohio Civil Service Employees Assn. v. Seiter*, 858 F.2d
1171, 1177 (6th Cir. 1988).  Public officials are expected to be aware of clearly established law
specifically governing their conduct.  *Long v. Norris*, 929 F.2d 1111, 1115 (6th Cir.), *cert. denied
sub nom*, *Jones v. Long*, 502 U.S. 863 (1991).

While defendant bears the initial burden of presenting facts that, if true, would entitle
him to immunity, the ultimate burden of proof falls on the plaintiff to show that the defendant
violated a right so clearly established that any official in defendant's positions would have clearly
understood that he was under an affirmative duty to refrain from such conduct.  *Noble*, 87 F.3d 157;
*Wegener*, 933 F.2d at 392.  Defendant has asserted that plaintiff was not allowed to attend group
activities with general population prisoners, because plaintiff is confined in protective custody for
his own protection.  As a protective custody prisoner, plaintiff has the opportunity for weekly visits
from the chaplain for bible study, prayer, counseling, correspondence courses and theological
questions.  Defendant has asserted that numerous opportunities are available to protective custody

prisoners to practice religious beliefs.  According to defendant, placing protective prisoners such as plaintiff in a group setting is not worth the security risk.  Although plaintiff asserts that there exists no greater security risk in allowing group religious services in protective segregation than there exists in every day protective segregation activities, it is reasonable to assume that plaintiff could be potentially in danger each time he is in any group activities.  The question in deciding a qualified immunity issue is whether clearly established law has been violated by defendant's conduct.  This issue appears to have been last considered in this district in *Jones v. Stine,* 843 F.Supp. 1186 (W.D. Mich. 1994).  In that case, defendants stated that it was not feasible to safely afford group religious services to protective custody segregation prisoners.  In granting the defendants qualified immunity the court explained:

> Plaintiff is undisputedly excluded from congregate services for his own safety because he has requested placement in protective segregation.  The purpose of the restriction thus appears to be reasonably related to legitimate penological objective.  This is the only restriction complained of and plaintiff is otherwise, apparently, as free as inmates in the general population to exercise his religion. . . .

> Viewing the asserted right in a particularized sense, the Court concludes that pre-existing case law is not such as would put reasonable corrections officials on notice that denial of congregate religious services to one in protective custody would violate his rights.  *Gawloski, supra,* 803 F. Supp. At 113, the court observed, "at least one court had clearly determined that a prisoner in protective custody had not absolute right to attend congregational religious services."  *Id.*, citing *Sweet v. South Carolina Dep't of Corrections*, 529 F.2d 854 (4th cir. 1975).  *See also Nolley v. County of Erie*, 776 F. Supp. 715, 741 (W.D.N.Y. 1991); *Benford v. Wright*, 782 F.Supp. 1263 (N.D. Ill. 1991).

*Id.* at 1194-95.  Plaintiff has not presented any case from the United States Supreme Court or the Sixth Circuit court of Appeals or any district court in this Circuit which established any contrary law since *Jones* was decided.  Plaintiff has presented a 1988 case from the Seventh Circuit *Williams v.*

*Lane*, 851 F.2d 867 (7th Cir. 1988) where the plaintiffs, protective segregation inmates, sued in part for group religious worship claiming that they were not afforded similar privileges as general population inmates. The Seventh Circuit upheld the district court's finding that the Illinois prison failed to articulate a valid security reason for denying religious opportunities to protective segregation inmates. Unlike the Seventh Circuit's decision in *Williams*, plaintiff is not denied almost every right to practice his religious beliefs. Essentially, plaintiff is asserting that he is being denied the right to congregate and worship with his fellow protective segregation inmates. Plaintiff has not shown that defendant acted unreasonably in violation of clearly established law in denying this opportunity under the circumstances of this case. Accordingly, in the opinion of the undersigned, defendant is entitled to qualified immunity. However, that does not end the court's inquiry, because qualified immunity does not foreclose the possibility of equitable relief. Plaintiff may still obtain equitable relief in this action if he can establish that his First Amendment rights have been violated by defendant's refusal to allow group worship.

Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest." *See, for example, Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction. *See, for example, Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See, generally, Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Turner*, 482 U.S. at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91.  First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.  *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984).  Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate."  *Turner*, 482 U.S. at 90.  Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."  *Turner*, 482 U.S. at 90.  Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90.  As stated by the court, this final factor "is not a 'least restrictive alternative' test."  *Id.* at 90.  "Prison officials need not show that *no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

Applying these standards to this case, defendant has set forth a rationale reason to justify denying group worship to plaintiff.  Defendant has set forth valid concerns that show that plaintiff's life is in danger in the prison because plaintiff was an informant for the ATF and helped convict at least fifty persons.  Plaintiff was a member of a gang and rival gang members have placed

hits on plaintiff's life.  There exists some justification for keeping plaintiff out of group activities.

On the other hand, plaintiff is in protective segregation and asserts that he already engages in group

activities with other protective segregation prisoners.  Defendant has not explained why it would be

unsafe for plaintiff to attend a group worship service with the same protective custody prisoners that

he continues to have contact with during other group activities.  This question remains unanswered

in this case.  In the opinion of the undersigned, a question of fact exists on the issue of whether group

religious service in the protective segregation  unit is feasible.

Plaintiff has moved for a temporary restraining order, show cause order and

preliminary injunction for group religious services.  Plaintiff has asserted that defendant's blanket

denial of group religious service to protective custody prisoners is an exaggerated response to

security concerns.  The issuance of preliminary injunctive relief is committed to the discretion of the

district court.  *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir.

1987).  In exercising that discretion, the court must consider and balance four factors:

> 1.  Whether the movant has shown a strong or substantial likelihood
> or probability of success on the merits.
>
> 2.  Whether the movant has shown irreparable injury.
>
> 3.  Whether the preliminary injunction could harm third parties.
>
> 4.   Whether the public interest would be served by issuing a
> preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).  These factors are not prerequisites to the grant

or denial of injunctive relief, but factors that must be carefully balanced by the district court in

exercising its equitable powers.  *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this

Court is required to proceed with the utmost care and must recognize the unique nature of the prison

- 13 -

setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). In the opinion of the undersigned plaintiff has not established a substantial likelihood of success on his claim that the defendant violated plaintiff's First Amendment rights by failing to provide group worship to protective custody inmates. In the opinion of the undersigned, this issue presents a close question, and plaintiff may ultimately succeed on this issue. However, plaintiff has not established a substantial likelihood of success at this time. Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here.

Because plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, I recommend that plaintiff's motion for a temporary restraining order be denied.

- 14 -

Accordingly, it is recommended that plaintiff's motion for summary judgment (Docket #30) and plaintiff's motion for a temporary restraining order, show cause order and preliminary injunction (Docket #14) be denied.  It is further recommended that defendant's motion for summary judgment (Docket #27) be granted in part, dismissing plaintiff's equal protection and due process claims, and granting defendant qualified immunity from damages.  The remaining claim would be plaintiff's First Amendment freedom of religion claim for injunctive relief.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   October 5, 2006

- 15 -